FILED'10 JUN 28 1 12 JSDCORE

# UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

### EUGENE DIVISION

SHARON L. NEYMAN,                                              09-495-TC

                    Plaintiff,

           v.                          FINDINGS AND RECOMMENDATION

MICHAEL J. ASTRUE, Commissioner Social
Security Administration,

                    Defendant.

COFFIN, Magistrate Judge:

    Plaintiff Sharon L. Neyman seeks judicial review of the Social Security Commissioner's final

decision denying her application for disability insurance benefits (DIB) under Title II of the Social

Security Act. This court has jurisdiction under 42 USC §§ 405(g) and 1383(c).

## Background

    Born in 1943, Neyman has a high school education. (Tr. 22).[1]  She has spent most of her

---

[1]Citations to "Tr." refer to indicated pages in the official transcript of the administrative
record filed with the Commissioner's Answer on October 16, 2009. (Dkt. #11).

work-life in production and assembly jobs but has also worked as a telemarketer, laborer, and retail sales associate. (Tr. 22). Neyman filed an application for DIB on August 30, 2005, alleging disability since January 1, 2002, due to back, leg, stomach and bowel problems, allergies, loss of her voice after talking for long periods, thyroid problems, and asthma. (Tr. 69). In January 2006, Neyman added post-traumatic stress disorder (PTSD) to her disabling impairments, explaining that the PTSD was "not new, but just diagnosed." (Tr. 80). Neyman must establish that her disability began before her date last insured, which was June 30, 2003. Tidwell v. Apfel, 161 F.3d 599, 601 (9th Cir 1998).

Neyman's application was denied initially and upon reconsideration. (Tr. 61-63, 66-69). On October 10, 2007, an Administrative Law Judge (ALJ) held a video hearing. (Tr. 747-790). The ALJ subsequently issued a decision finding that Neyman could return to her past relevant work and therefore was not disabled at any time during the relevant period. (Tr. 18-24). The Appeals Council denied review on March 19, 2009, making the ALJ's decision the final decision of the Commissioner. (Tr. 5-8). Neyman seeks review of this finding.

## The ALJ's Findings

The ALJ found that Neyman has not been under a disability during the relevant time period. (Tr. 24). The ALJ found that although Neyman's chronic back pain was a severe impairment, Neyman did not have an impairment or combination of impairments that met or medically equaled a listed impairment. (Tr. 24). She found that Neyman has the residual functional capacity to perform light work with occasional bending, and, therefore, is capable of performing her past relevant work as a general laborer. (Tr. 24).

///

Page 2 - FINDINGS AND RECOMMENDATION

## Standard

This court's review is limited to whether the Commissioner's decision to deny benefits to plaintiff is based on proper legal standards under 42 U.S.C. § 405(g) and supported by substantial evidence on the record as a whole. Copeland v. Bowen, 861 F2d 536, 538 (9th Cir 1988) (citing Desrosiers v. Secretary of Health and Human Services, 846 F2d 573, 575-76 (9th Cir 1988)). Substantial evidence means more than a mere scintilla of evidence, but less than a preponderance, Saelee v. Chater, 94 F3d 520, 521 (9th Cir 1996) (citing Sorensen v. Weinberger, 514 F2d 1112, 1119 n.10 (9th Cir 1975)). "It means such evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 402 (1971) (quoting Consolidated Edison Co. v. N.L.R.B., 305 US 197, 229 (1938)). The court must consider both evidence that supports and evidence that detracts from the Commissioner's decision, but the denial of benefits shall not be overturned even if there is enough evidence in the record to support a contrary decision. Jones v. Heckler, 760 F2d 993, 995 (9th Cir 1985). If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a finding of either disability or nondisability, the finding of the ALJ is conclusive, see Sprague v. Bowen, 812 F2d 1226, 1229-30 (9th Cir 1987), and may be set aside only if an improper legal standard was applied in weighing the evidence. Burkhart v. Bowen, 856 F2d 1335, 1338 (9th Cir 1988).

## Discussion

Neyman contends that, because portions of the medical expert's testimony are transcribed as "inaudible" in the official transcript, she was denied the opportunity to respond to this testimony. Neyman also argues that the ALJ failed to properly assess her testimony, failed to properly consider

///

Page 3 - FINDINGS AND RECOMMENDATION

her treating physicians' opinions, erroneously found that she could return to her past work, and erroneously found that she was not disabled.

**I.    Inaudible Testimony**

The ALJ relied on the testimony of orthopedic medial expert William Newman, M.D. (Tr. 22). A review of the transcript reveals that portions of Dr. Newman's testimony were transcribed as "inaudible." (Tr. 757-58). Neyman argues the transcription difficulties deprived her of an opportunity to challenge the ALJ's reliance on Dr. Newman's testimony. Neyman cites <u>Richardson v. Perales</u>, in support of her argument. 402 US 389 (1971). <u>Richardson</u> held that a report written by a licensed physician who has examined the claimant may be received during a hearing and may constitute substantial evidence supporting the ALJ's adverse finding when the claimant has not exercised his right to subpoena the reporting physician, thereby providing himself with an opportunity for cross-examination. ( <u>Id.</u> at 402).

Here, the record shows that Neymans' counsel was afforded a full opportunity to cross-examine Dr. Newman during the hearing. (Tr. 760-63). At the conclusion of the hearing, Neyman's counsel requested permission to ask another physician questions based on Dr. Newman's testimony. (Tr. 789). The ALJ granted Neyman an additional ten days to submit briefing on the additional questions. (Tr. 789). In briefing to the Appeals Council, Neyman's counsel addressed Dr. Newman's testimony. (Tr. 682). Neyman focuses her argument about the inaudible portions of the transcript on the section where Dr. Newman discusses that Neyman met a lumbar listing in 2007. (Dkt. # 17 at 10-11).

Even assuming that the failure to clearly transcribe Dr. Newman's testimony was an error, I cannot find that it was harmful. <u>Shinseki v. Sanders</u>, __US__, 129 Sct 1696, 1705-06 (2009)

Page 4 - FINDINGS AND RECOMMENDATION

(stating that the burden of proving agency error was harmful lies with party challenging agency's decision). The record shows that Dr. Newman's inaudible testimony concerned whether Neyman met a lumbar listing in 2007. The relevant period in this case, however, is before June 30, 2003, which is the last insured date for Neyman. Additionally, the way that Neyman's hearing counsel characterizes Dr. Newman's testimony belies her claim on appeal that the ALJ misstated Dr. Newman's opinion. Specifically, her hearing counsel disputed Dr. Newman's opinion that "all of [Neyman's] problems stemmed from a 2004 fall" and that Neyman was "capable of light work from January 2002 through August 2004." (Tr. 682). Finally, Neyman's counsel cross examined Dr. Newman about whether Neyman's arachnoiditis could be traced to a procedure performed 20 years prior, and at the and of the hearing, Neyman's counsel requested additional time to ask Dr. Metzger questions in response to Dr. Newman's testimony, which the ALJ granted. While I am mindful that Neyman had different counsel at her hearing and on appeal, I cannot find that the inaudible transcription of portions of Dr. Newman's testimony constitutes harmful error.

**II.    Credibility**

Neyman argues that the ALJ failed to give clear and convincing reasons for discrediting her testimony. Once a claimant has shown an underlying impairment, the ALJ may not reject symptom testimony without specific findings showing a clear and convincing reason for doing so. Smolen v. Charter, 80 f.3d 1273, 1282 (9th Cir 1986). The ALJ may not reject symptom testimony simply because the medical record does not corroborate the severity of the claimant's reported symptoms. Id. The ALJ's credibility findings must be specific enough to allow a reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony. Orteza v. Shalala, 50 F3d 748, 750 (9th Cir 1995). For credibility findings, the ALJ may consider objective medical evidence, the

Page 5 - FINDINGS AND RECOMMENDATION

claimant's treatment history, daily activities, work record, and observations of physicians and third parties with personal knowledge of the claimant's functional limitations. Smolen, 80 F3d at 1284. The ALJ may employ ordinary techniques of credibility evaluation, such as weighing inconsistent statements regarding symptoms by the claimant. Id.

Here, the ALJ concluded that Neyman's statements were not fully credible because the objective medical findings were inconsistent with Neyman's allegations of disabling limitations and with her allegations of worsening in her condition. (Tr. 22-23). The ALJ noted that, while there was little evidence of treatment for Neyman's back, there was much evidence of treatment for other ailments, such as gallbladder, voice problems, sinus congestion, etc. (Tr. 23). The ALJ noted that there was no objective evidence to corroborate Neyman's anxiety and observed that Neyman's activities are not consistent with her alleged disability. (Tr. 23). Specifically, the ALJ noted that Neyman led a "fairly normal" lifestyle. (Tr. 23). Neyman worked in 2003 and 2002 and ceased to work only because she was laid off. Neyman testified that she completed household chores, watched television, socialized, took walks, and prepared meals. (Tr. 23). Neyman's husband testified that Neyman did household chores, socialized, took care of the dog, and enjoyed oil painting and reading. (Tr. 23).

Neyman explains the contradiction between her symptom testimony and her failure to seek treatment by having no medical insurance and having a fear of authority figures. (Dkt. #17 at 12). She submits she was desperate when she applied for work in 2003, and notes that her ability to perform household tasks does not translate into an ability to work 40 hours a week. Id. at 14-15. Substantial evidence in the record, however, supports the ALJ's credibility findings. For example, the record indicates that Neyman had insurance coverage since 2000. (Tr. 143-44). Neyman sought

Page 6 - FINDINGS AND RECOMMENDATION

treatment for other medical problems during the relevant period. (Tr 205-19, 305, 419-46). Neyman also indicated in a questionnaire that she gets along "ok, I think" with authority figures. (Tr. 94). As discussed above, the ALJ properly relied on the expert opinion of Dr. Newman.

The ALJ properly considered the evidence in the record and offered clear, specific, and convincing reasons for rejecting Neyman's testimony. Tommasetti v. Astrue, 533 F.3d 1035, 1039. The ALJ's findings are a rational reading of the record. Magallanes v. Bowen, 881 F.2d 747, 750 (9th Cir 1989).

**III.    Medical Source Statements**

Neyman alleges that the ALJ improperly rejected the opinions of her treating physicians, Dr. Metzger and Dr. Isaacs. Generally, a treating physician's testimony is given more weight than that of an evaluating or reviewing physician. Lester v. Chater, 81 F.3d 821, 830 (9th Cir 1995). An ALJ must provide "clear and convincing reasons" for rejecting the uncontradicted opinion of a treating physician. Id. Likewise, the opinion of an examining physician is entitled to greater weight than the opinion of a nonexamining physician. Id. The ALJ is responsible for resolving conflicts and ambiguities in the medical testimony. Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir 1989).

Here, the ALJ gave significant weight to Dr. Newman's expert testimony. (Tr. 22). Dr. Newman opined that Neyman's significant problems started in 2004, after a fall at home. (Tr. 22). Although Dr. Newman stated that Neyman met a lumbar listing in 2007, he assessed her as able to perform at a light exertional level between January 1, 2002 and August 2004. (Tr. 23).

Neyman contends that the ALJ erred in failing to "address the weight" she gave to a letter from Dr. Metzger, Neyman's treating physician. (Dkt. #17 at 15). The ALJ cited Dr. Metzger's August 2007 report stating that an MRI of March 23, 2007, was consistent with arachnoiditis and

Page 7 - FINDINGS AND RECOMMENDATION

that Neyman met the criteria for the diagnosis of arachnoiditis in 2007, but did not discuss this

opinion. (Tr. 22). Because Dr. Metzger's 2007 report was not relevant to Neyman's condition in

2003, the ALJ did not err by failing to discuss it. Orn v. Astrue, 495 F.3d 625, 631-32 (9th Cir

2007). Moreover, Dr. Metzger's 2007 report does not contradict Dr. Newman's expert opinion.

Neyman also contends that the ALJ failed to address that her treating physician, Dr. Isaacs

had referred Neyman for a handicapped position. (Dkt. #17 at 16). The ALJ did address Dr. Isaacs's

referral when she discussed that Neyman had applied for jobs in 2003. (Tr. 23). The ALJ

specifically cited to Dr. Isaacs's notes regarding the referral. (Tr. 23, citing to page 139 (which is Tr.

283)). Dr. Isaacs's note (which is labeled SUBJECTIVE) states:

> This patient is here because she is applying for a job that would only hire disabled
> people. She has been put on permanent disability in the past, and she needs a form
> filled out so she can be eligible for this job. She had low back surgery in 1987 and
> at that time was given a 15% disability on the basis of her pain....

(Tr. 283). Based on the record, the ALJ's treatment of Dr. Isaacs's referral to the disability only job

is rational. Moreover, Dr. Isaacs's treatment note does not contradict Dr. Newman's expert opinion.

Because Dr. Newman's testimony was not contradicted, the ALJ was entitled to give his

opinion significant weight. Orn, 495 F3d at 631-32. I find that the ALJ's interpretation of the

medical evidence was rational and should be upheld by this court. Burch v. Barnhart, 400 F3d 676,

680-81 (9th Cir 2005).

## IV.    Residual Functional Capacity Finding

Neyman argues that the ALJ erred in her finding that Neyman retained the residual functional

capacity (RFC) to return to her previous production or packaging job. The ALJ determines a

claimant's RFC. SSR 96-8p found at 1996 WL 374184. In assessing a claimant's RFC, the ALJ

Page 8 - FINDINGS AND RECOMMENDATION

must apply the proper legal standards and base her decision on substantial evidence. Bayliss v. Barnhart, 427 F3d 1211, 1217 (9th Cir 2005).

Here, the ALJ found that, between January 1, 2002 and June 30, 2003, Neyman had the RFC to perform light work with occasional bending. (Tr. 24). The ALJ based her finding on Dr. Newman's opinion that Neyman was able to perform work at a light exertional level from January 1, 2002 through August 10, 2004. (Tr. 22, citing Tr. 758-59). Neyman argues that this finding failed to take into account other limitations: chronic upper back, right shoulder and neck problems and a vocal cord polyp. (Dkt. #17 at 17). I find, however, that the ALJ's determination is supported by substantial evidence as it "took into account limitations for which there was record support that did not depend on [the claimant's] subjective complaints" which lacked credibility. Bayliss, 427 F3d at 1217. I recommend that this court affirm the ALJ's RFC finding.

## V.    Evidence Presented to the Appeals Council

Neyman contends that the weight of the medical evidence supports a finding that she is disabled. She relies on a letter from her treating physician, Dr. Metzger, which was faxed on July 15, 2008 and a May 21, 2008 letter from Dr. Isaacs. (Tr. 691-92; 731). Both of these letters were submitted after the ALJ issued her decision; however, the Appeals Council admitted this additional evidence into the record. (Tr. 5-10). The Appeals Council reviewed the additional evidence Neyman submitted but found that the additional evidence did not provide a basis for changing the ALJ's decision. (Tr. 5-8). Specifically, the Appeals Council noted that the additional evidence "does not affect the decision about whether [Neyman was] was disabled at the time [she was] last insured for disability benefits." (Reply Brief at 3 (dkt. #24)). Neyman argues that the evidence does relate to the time period when she was last insured for disability benefits. Id.

Page 9 - FINDINGS AND RECOMMENDATION

This court may remand this matter for consideration of the new evidence–Dr. Metzger's letter and Dr. Isaac's letter, only where such evidence is material and good cause exists for failing to incorporate it into the record of the prior proceeding. 42 USC § 405(g). The new evidence is material if it creates a reasonable possibility of changing the outcome and bears directly on the matter. Mayes v. Massanari, 276 F3d 462 (9th Cir 2001). Here, the two letters contain conclusory opinions with little to no reference to contemporaneous treating notes, and I cannot find that there is a reasonable possibility they would have changed the outcome. Moreover, I cannot find that the letters presented new evidence to the Appeals Council; instead they summarized evidence already presented during the hearing before the ALJ. Even assuming the letters were material, Neyman cannot establish good cause for failing to produce the evidence earlier. Clem v. Sullivan, 894 F2d (9th Cir 1990). She offers no explanation as to why the letters were not offered during the prior proceeding.

I find that it is not appropriate to remand this matter for further consideration of the two letters supplied to the Appeals Council.

## VI.  The Medical Vocational Guidelines

Neyman argues that the ALJ failed to meet her burden of showing that jobs within Neyman's RFC exist in the national economy. If an adjudication proceeds beyond step three, the ALJ must evaluate medical and other relevant evidence in assessing the claimant's RFC. 20 CFR § 404.1520(e), SSR 96-8 available at 1996 WL 374180. The ALJ uses this information to determine if the claimant can perform her past relevant work at step four. See e.g., Carmickle v. Commissioner, 533 F3d 1155, 1166 (9th Cir 2008)(stating that the claimant bears the burden of proving she cannot perform her prior work at step four). Here, the ALJ determined that Neyman

Page 10 - FINDINGS AND RECOMMENDATION

could perform her past relevant work, and the ALJ was not required to evaluate step five.

      Accordingly, I cannot find that the ALJ erred by not reaching step five.

## Conclusion

      For the reasons stated above, I recommend that this court affirm the Commissioner's decision. The above Findings and Recommendation will be referred to a United States District Judge for review. Objections, if any, are due no later than fourteen days after the date this order is filed. The parties are advised that the failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F2d 1153 (9th Cir 1991). If no objections are filed, review of the Findings and Recommendation will go under advisement on that date. If objections are filed, any party may file a response within fourteen days after the date the objections are filed. Review of the Findings and Recommendation will go under advisement when the response is due or filed, whichever date is earlier.

      DATED this **28** day of June 2010.

                                      THOMAS M. COFFIN
                               United States Magistrate Judge